**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON**

WILLIE ELSWICK,

      Plaintiff,

vs.                              Civil Action No. 2:19-cv-00221

ROBERT JOHNSON, individually,
COUNTY COMMISSION OF LOGAN
COUNTY, a political subdivision of the
State of West Virginia,

      Defendants.

## COMPLAINT

This complaint, brought pursuant to 42 U.S.C. Section 1983, the Fourth Amendment to the United States Constitution, the West Virginia Governmental Tort Claims and Insurance Reform Act, W. Va. Code § 29-12A-1, *et seq*, and common law, arises out of the Defendants' use of excessive force and unlawful search and seizure against the Plaintiff on or about September 20, 2017 in Logan County, West Virginia, within the Southern District of West Virginia.

## JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. 1331 and 1343.

## PARTIES

1.      The Plaintiff was at all times relevant hereto a resident of Man, McDowell County, West Virginia, within the Southern District of West Virginia.

2.      Defendant Johnson was at all times relevant hereto a Sheriff's Deputy for the Logan County Sheriff's Department, which is under the Logan County Commission,

1

and was at all times relevant hereto acting under the color of law and within the scope of his employment. Upon information and belief, Johnson is now an employee of the West Virginia State Police. Said Defendant is named herein in his individual capacity.

3.      Defendant Logan County Commission ("LCC") is a political subdivision of the State of West Virginia, and as such, is liable for the negligent conduct of its agents and employees, including the Sheriff, the Sheriff's Department, and the employees of the Sheriff's Department, so long as that conduct was carried out within the scope of their employment. *See* West Virginia Governmental Tort Claims and Insurance Reform Act, W. Va. Code § 29-12A-1, *et seq*.

4.      The conduct alleged herein to have been committed by employees and/or agents of Defendant LCC are hereby alleged to have been committed by said agents and/or employees acting in the scope of their employment and authority.  The causes of action asserted herein against Defendant LCC refer to acts performed by agents and employees of said Defendant political subdivision, rather than the formulation and implementation of policy related to how law enforcement and police protection are provided.

## **FACTS**

5.      Paragraphs 1 through 4 are hereby incorporated by reference as though fully restated herein.

6.      On September 20, 2017, the Plaintiff was sitting on the front porch of his friend's home located in Logan County, West Virginia.

7.      A neighbor approached, upset over his vehicle receiving damage by a third party.  He incorrectly believed that plaintiff had observed the damage being inflicted on the vehicle, since he had been sitting on the front porch.

8.      The neighbor became irate.  Plaintiff stepped off the porch and attempted to calm the neighbor down and resolve the issue.

9.      The neighbor grew more irate.  The neighbor retrieved a baseball bat and began to threaten everyone present, including the plaintiff.

10.      The man attempted to attack the Plaintiff with the baseball bat.  Plaintiff found a tire iron to defend himself and others, and ended up wrestling the man down to the ground and taking the bat away from him.

11.      The neighbor returned to his home.  A third party neighbor called the police.

12.      The plaintiff returned to his friend's home and continued to sit on the front porch.

13.      The defendant police officers showed up to the scene after receiving a call about an altercation.  Upon information and belief, Johnson was a personal friend or acquaintance of the neighbor who had been the aggressor, and proceeded towards the plaintiff, instead of questioning or arresting the neighbor.

14.      Defendant Johnson stepped onto the front porch and began shouting at the plaintiff and his friend.  Johnson pushed them forcibly into the house while shouting. Johnson shoved the Plaintiff through the living room of the home, and then shoved him onto the floor.

15.     Defendant Johnson then began kicking the Plaintiff.  He shouted, "stay down, stay down."

16.     Plaintiff responded, "This is wrong, this is wrong, I'm innocent."

17.     Defendant Johnson, in a violent rage, then picked the plaintiff up off the ground, shoved him through the house into the bedroom, and through him over the bed and onto the floor on the other side of the bed.

18.     Johnson then left plaintiff where he landed on the floor and left the residence.  At that time a witness observed Johnson put black gloves on his hands, and then return to the residence.

19.     Upon returning the residence, Johnson approached the plaintiff and said, "Where's the gun, where's the gun?  They said you had a gun.  Where is it?"  Plaintiff responded that there was no gun; that he has a permit, and a gun in his truck, but that there was no gun involved in the self-defense altercation.

20.     One of the officers on the scene then searched the plaintiff's truck and seized his firearm, which was unrelated to the altercation, and which had been legally concealed in the truck at all times.

21.     Defendant Johnson then started slapping the plaintiff around with his black-gloved hands, causing injury to the plaintiff's face.

22.     Defendant Johnson then continued to search the residence and found a cooler.  He shined his flashlight on the cooler, and said, "You like to drink, huh?"  And then Johnson started grabbing beers out of the cooler and throwing them at him, shouting, "Here have this, and have this."  One of the beers hit the plaintiff, who then took cover behind the bed.

23.     One of the officers then handcuffed the plaintiff, and said, "See there, if you would have just said something about who hit his car two or three weeks ago, this would have been solved."  Then he said, "Do we have a problem boy?"

24.     Plaintiff responded, "This ain't right."

25.     Plaintiff was then put in the police cruiser and taken to jail.  He had to stay in jail overnight.  It was 11 p.m. when he arrived, and about noon the following day when he was released.

26.     After getting released from jail, plaintiff went to the hospital in Logan, West Virginia.  He was diagnosed with a broken nose, four bruised ribs, and contusions and abrasions, including a large knot on the top of his head where he was struck with the beer can thrown by Johnson.  All of the injuries were incurred as a result of the violent use of physical force by Defendant Johnson at the time of his arrest.

27.     The plaintiff had no criminal history.  He was arrested without a warrant by Defendant Johnson, and charged with assault, battery, brandishing a weapon, and obstructing an officer.

28.     On or about December 4, 2017, the charges went to a bench trial before the Magistrate Court of Logan County.  Following trial, all counts were dismissed with prejudice by Magistrate Joseph Mendez, noting "defective complaint."  Upon information and belief, Magistrate Mendez realized that Defendant Johnson had sworn to false allegations in the Criminal Complaint against the Plaintiff, and had omitted important material facts which would have negated probable cause to continue to hold and charge the plaintiff.

## COUNT ONE - EXCESSIVE FORCE UNDER 42 U.S.C. 1983

## VIOLATION OF THE FOURTH AMENDMENT

29.     Plaintiff incorporates by reference all the allegations contained in the previous paragraphs.

30.     Defendant Johnson, under color of state law, used excessive force against the plaintiff on or about September 20, 2017, at the home of his friend located in Logan County, West Virginia, by pushing, shoving, kicking and slapping the plaintiff, as well as by hitting the plaintiff with a thrown beer bottle, as described above in detail in the statement of facts.

31.     When Defendant Johnson engaged in the infliction of violent physical force against the plaintiff by pushing, shoving, kicking and slapping the plaintiff, as well as by hitting the plaintiff with a thrown beer bottle, no objectively reasonable police officer could have perceived the plaintiff as posing an immediate threat to the safety of any person, including the defendant, so as to require or necessitate the use of physical force.

32.     The defendant police officer had no reasonable reason to believe that the defendant had committed any crime.

33.     The plaintiff was not armed at any time during the use of force, nor would any objectively reasonable officer have had reason to believe that the plaintiff was armed.

34.     At no time did the plaintiff attack or assault the defendant, or any other police officer, or any other individual in the defendant's presence.

35.     The defendant police officers' actions were objectively unreasonable, unlawful, unwarranted, and in violation of the Plaintiff's clearly established procedural and substantive rights, including the right to be free from excessive force under the Fourth Amendment of the United States Constitution.  Fourth Circuit case law has long been clear that violent physical force by a police officer is excessive in response to "mere words" by an arrestee where the arrestee "never pushed, kicked, or threatened anyone." Jones v. Buchanan, 325 F.3d 520 (4th Cir. 2003).  A reasonable officer would not have had probable cause to feel threatened by Mr. Hurt, who alleges that he explained each of his actions, made no sudden moves, and did not verbally or physically threaten any of the officers. *See*, Cooper v. Sheehan, 735 F.3d 153, 159 (4th Cir. 2013) (no probable cause to feel threatened by man who exited his home with a shotgun pointed down in response to hearing officers, who had not identified themselves, outside, but made no sudden moves, no threats, and ignored no commands.)

36.     The defendant officer's actions were willful, wanton, intentional, malicious and done with a callous and reckless disregard for the Plaintiff's Fourth Amendment right to be free from excessive force.  In the event that this Court determines that the use of force, or any portion of the use of force, against the Plaintiff was performed at a time was when he was a pretrial detainee, the Plaintiff pleads excessive force, in the alternative, under the Fourteenth Amendment of the U.S. Constitution.

37.     The plaintiff suffered harm and damages, for which he is entitled to recover.

## COUNT TWO - UNREASONABLE SEARCH AND SEIZURE

## IN VIOLATION OF THE FOURTH AMENDMENT

38.     Plaintiff incorporates by reference all of the previous paragraphs.

39.     On or about September 20, 2017, the defendant police officer, under color of law, performed a search and seizure of the plaintiff, by:

a) seizing and searching his person pursuant to a use of force and warrantless arrest without probable cause;

b) searching the residence at which the plaintiff was visiting, including his cooler inside the residence; and

c) searching plaintiff's vehicle, or by directing another officer to do so, and seizing a legally owned firearm out of his vehicle.

40.     All of these searches and seizures were performed without a warrant.

41.     The defendant police officer did not obtain consent to perform any of the said searches and seizures.  Nor did the defendant police officer claim any applicable exception to the warrant requirement, such as exigent circumstances.

42.     No objectively reasonable police officer would have any reason to believe they had the authority to enter and search the plaintiff's friend's residence, searching the cooler, searching the vehicle, and searching and seizing the plaintiff himself, as occurred on September 20, 2017, as described above and throughout this complaint.

43.     No objectively reasonable police officer would have believed there exists probable cause to arrest the plaintiff on September 20, 2017.

44.     The arrest of the plaintiff was unsupported by probable cause.

45.     The Criminal Complaint submitted to the magistrate by the defendant police officer was also unsupported by probable cause, and misrepresented the allegations to the magistrate, which was subsequently revealed to the magistrate at the bench trial of the matter.

46.     The criminal proceedings instituted by the defendant police officer terminated in the plaintiff's favor, after the magistrate realized that the allegations made by the defendant police officer were false, resulting in the dismissal of the charges with prejudice, noting that the complaint was "defective."

47.     Defendant Johnson knowingly and intentionally, or with a reckless disregard for the truth, made false statements in the Criminal Complaint instituted against the plaintiff, as described above in detail, in his sworn affidavit to the magistrate, which would have informed the magistrate of facts that would negate probable cause.

48.     The said false statements and omissions were material and necessary to the magistrate's finding of probable cause.

49.     Defendant Johnson's misstatements and omissions were an attempt to mislead the otherwise neutral and detached magistrate, and were rather for the purpose of covering up and attempting to justify the use of physical force and unlawful search inflicted against the plaintiff by Defendant Johnson.

50.     Defendant Johnson's actions as alleged herein were under color of law, objectively unreasonable, willful, wanton, intentional and done with a callous and reckless disregard for the plaintiff's Fourth Amendment rights to be free from unreasonable search and seizure.

51.     The plaintiff suffered harm for which he is entitled to recover.

## COUNT TWO - STATE LAW NEGLIGENCE CLAIM

52.     Plaintiff hereby incorporates the previous paragraphs as though fully restated herein.

53.     Defendant the Logan County Commission ("LCC") specifically owed the plaintiff a duty of reasonable care.  It was reasonably foreseeable to the BCC that plaintiff would be harmed as a result of their employee Johnson's actions.

54.     Defendants, by and through their agent and employee, Deputy Johnson, breached that duty as detailed above and incorporated herein, and furthermore by negligent supervision and training of the defendant police officer.  Defendant Johnson committed an excessive use of physical force, as well as multiple unreasonable seizure violations against the plaintiff in violation of the Fourth Amendment of the U.S. Constitution, and further made false statements and material omissions in the arrest warrant submitted to the Magistrate Court of Logan County, as detailed above, which led to the arrest unlawful incarceration of the plaintiff.  Defendant Johnson was acting in accordance with his training and supervision.

55.     Upon information and belief, the LCC has failed to maintain proper policies and procedures which would appropriately supervise police officers such as Defendant Johnson, including, but not limited to, failure to document, review, and approve, uses of violent physical force against citizens, as well as failure to discipline and terminate officers who engage in violate civil rights violations.  Moreover, the LCC has failed to take remedial measures, or otherwise discipline Defendant Johnson's past uses of violent physical force, including but not limited to, the arrest of Mark Messer on August

18, 2016, which resulted in Mr. Messer suffering a serious head wound while in Johnson's custody, causing a 17 day coma and a 29 day hospital stay for Mr. Messer.

56.     As a direct and proximate result of the LCC's negligence, plaintiff suffered harm for which she is entitled to recover.

**<u>PRAYER</u>**

WHEREFORE, based on the above stated facts, the Plaintiff respectfully requests that this Honorable Court award:

1.     Damages against the Defendants in an amount to be determined at trial which will fairly and reasonably compensate the Plaintiff for:

a.     Past, present and future medical expenses;

b.     Past, present and future pain and suffering;

c.     Loss of enjoyment of life;

d.     Psychological and emotional distress;

e.     Any other compensatory damages to be proven at trial;

f.     Punitive damages against the individual Defendants in an amount to be determined at trial;

g.     Reasonable attorney fees and costs;

h.     Any other relief that this Court deems is just and fair;

i.     All other damages provided by law;

j.     Injunctive relief requiring appropriate training, supervision and discipline in order to remedy all constitutional deprivations which the Plaintiff suffered;

k.     Declaratory judgment relief establishing the Defendants' above-described conduct violates the Plaintiff's clearly established constitutional rights.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

                                         WILLIE ELSWICK
                                         By Counsel

/s John H. Bryan
John H. Bryan (WV Bar No. 10259)
JOHN H. BRYAN, ATTORNEY AT LAW
411 Main Street
P.O. Box 366
Union, WV 24983
(304) 772-4999
Fax: (304) 772-4998
jhb@johnbryanlaw.com

for the Plaintiff